UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN F. PEACOCK** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-0988** |
| **UNITED STATES OF AMERICA** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**. (Document #73.) This motion to dismiss alleges that, for purposes of the Federal Tort Claims Act, Dr. Warner is not a government employee, but an independent contractor. Because this court determines that Dr. Warner is an independent contractor, the motion is **GRANTED**, and the case is **DISMISSED**.

### I. BACKGROUND

On October 22, 2003, John F. Peacock underwent an angioplasty procedure of his left circumflex artery at the Dallas Veterans Administration Medical Center (Dallas VA). Shortly after the surgery, Peacock experienced severe chest pain. Dr. John Warner and Dr. Justin Martin performed a cardiac catheterization, which revealed that the left main artery was dissected and the left anterior descending artery was occluded. Peacock was returned to surgery where an emergency double coronary bypass graft was performed. Meanwhile, Peacock suffered a heart

attack and suffers from severe congestive heart failure.

After pursuing an administrative claim with the Department of Veterans Affairs, on February 14, 2007, Peacock filed a complaint under the Federal Tort Claims Act, 22 U.S.C. § 2271 *et seq*. against the United States, alleging that Drs. Martin and Warner, employees of the Dallas VA, breached the standard of care and caused his injuries.

In the answer to the complaint on June 1, 2007, the government "admitted" to the allegations in paragraph V of the plaintiff's complaint that "Justin Martin, M.D. and John Warner, M.D. are health care providers, who . . . were employees of defendant at the Dallas Veterans Affairs Medical Center and were acting within the course and scope of their employment." In the answer to interrogatory number 1 requesting the addresses for the five physicians named in the complaint, the government provided the following information for Dr. Warner:

> Dr. Warner has been a federal employee with the Veterans Administration Medical Center since April 12, 2003, to present. His address is University of Texas, Southwestern Medical Center, 5909 Harry Hines Blvd., HA9.133, Dallas, Texas 75390.[1]

The government refers Peacock to Dr. Warner's attached Curriculum Vitae, which indicates that, beginning in the year 2003, Dr. Warner had hospital appointments as an attending cardiologist at UT Southwestern University Hospital; Dallas VA Medical Center, Dallas, TX; and Parkland Memorial Hospital, Dallas, TX.

---

[1] As to Dr. Martin, the government responded that "Dr. Martin was an independent contractor in the Emergency Room between 7/25/02 to 12/10/03. He no longer works on a contract basis for the VA nor is he on the VA staff."

By letter of April 28, 2003, the Department of Veterans Affairs, North Texas Health Care System, informed Dr. Warner that his request for appointment to the medical staff was approved. The appointment was authorized under 38 U.S.C. § 7405(a)(1), which provides:

> The Secretary, upon the recommendation of the Under Secretary for Health, may employ, without regard to civil service or classification laws, rules, or regulations, personnel as follows:
> (1) On a temporary full-time basis, part-time basis, or without compensation basis, persons in . . .
> (A) Positions listed in section 7401(1) of this title, [which includes physicians].

In the statement of uncontested material facts in section 7(k) of the pretrial order, filed on July 21, 2008, the parties stated that "[f]rom October 20, 2003 through December 23, 2003, the physicians, nurses, and staff who provided treatment to John Peacock were employees and/or agents of the Dallas Veterans [Administration] Medical Center."

On the eve of trial, the government presented an affidavit of Dr. Stephen R. Holt, the Deputy Chief of Staff at the Dallas Veterans Administration Medical Center. Dr. Holt states that Dr. Warner was an independent contractor during the term of the contract, not an employee of the Veterans Administration.

The government filed a motion to dismiss the claims against Dr. Warner for lack of subject matter jurisdiction, alleging that Dr. Warner was an independent contractor physician, not a federal employee, for purposes of the FTCA.[2] The court denied the motion to dismiss without prejudice, and reopened discovery for 60 days on the issue of subject matter jurisdiction.

---

[2] The government filed an alternative motion for summary judgment; however, the motion is properly brought as one to dismiss for lack of subject matter jurisdiction. See Broussard v. United States, 989 F.2d 171, 177 (5th Cir. 1993).

Following discovery, the government reurged its motion to dismiss.

## II. DISCUSSION

### A. Legal standard

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  "Lack of subject matter jurisdiction may be found in any one of three instances:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Id.  In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exists.  Id.  "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."  Id.

"It is elementary that the United States, as sovereign, is immune from suits save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  Broussard v. United States, 989 F.2d 171, 174 (5th Cir. 1993) (internal quotation and citation omitted).  "The United States has statutorily consented to suits pursuant to the terms of the Federal Tort Claims Act [FTCA]."  Id.  The FTCA contains a limited waiver of the United State's sovereign immunity, allowing a plaintiff to sue the United States for damages in compensation for injuries resulting from certain torts of employees of the government acting within the scope of their employment."  Robb v. United States, 80 F.3d 884,

887 (4th Cir. 1996); 28 U.S.C. § 1346(b).  "This consent to be sued, though, does not extend to the acts of independent contractors."  Broussard v. United States, 989 F.2d at 174.  "[I]f the act was not committed by an employee of the Government, then the court must dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."  United States v. Linkous, 142 F.3d 271, 275 (5th Cir. 1998).  The FTCA is strictly construed, and all ambiguities are resolved in favor of the sovereign.  United States v. Nordic Village, Inc., 112 S.Ct. 1011, 1014 (1992).

**B.  Independent contractor status**

The government contends that Dr. Warner was not a federal employee of the Dallas VA when he performed the procedure, but was an employee of the University of Texas Southwestern Medical Center (UTSWMC) at Dallas.  The government argues that the University of Texas and the Veterans Administration entered into a contract for professional cardiology services and that Dr. Warner worked at the Dallas VA under this contract.  Therefore, the government argues, the court lacks jurisdiction because the United States is not liable under the Federal Tort Claims Act for the negligent acts of independent contractors.

**1.  Factors to be considered in determining independent contractor status**

Congress left the courts free to look to the law of torts and agency to define the term 'contractor.'  See Broussard v. United States, 989 F.2d at 174 (citing Logue v. United States, 93 S.Ct. 2215, 2220 (1973)).  "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'"  United States v. Orleans, 96 S.Ct. 1971, 1976 (1976) (holding that a community action agency is not a federal agency, and employees are not federal employees) (citing Logue v.

5

United States, 93 S.Ct. at 2219) (holding that employees of county jail housing federal prisoners pursuant to a contract with the Federal Bureau of Prisons were not federal employees). However, the control of detailed physical performance of the actor is not the only factor. Id. at175.  "A critical element in distinguishing an agency from a contractor is the power of the Federal Government to control the detailed physical performance of the contractor." Id.  In Logue v. the United States, the Supreme Court relied on § 2 of the Restatement (Second) of Agency, which defines an independent contractor as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Id. (citing Logue v. United States, 93 S.Ct. at 2215 and quoting § 2 of the Restatement (Second) of Agency).  The courts look to the factors listed in § 220 of the Restatement of Agency to determine whether Dr. Warner was an employee of the government or an independent contractor:

> (1) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (2) whether or not the one employed is engaged in a distinct occupation or business;
> (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (4) the skill required in the particular occupation;
> (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (6) the length of time for which the person is employed;
> (7) the method of payment, whether by the time or by the job;
> (8) whether or not the work is a part of the regular business of the employer;
> (9) whether or not the parties believe they are creating the relation of master and servant; and

(10) whether the principal is or is not in business.

See Linkous v. United States, 142 F.3d at 276.[3]

**2. Application of the factors**

   **a. Factors one through four**

Peacock acknowledges that the first four factors seem to weigh in favor of independent-contractor status because the nature of a physician's work requires considerable autonomy in practice.

   **b. Factors five, six, eight and ten**

Peacock argues that factors five six, eight, and ten support Dr. Warner's status as a federal employee. Under factor five, it is undisputed that the Dallas VA supplied Dr. Warner with instrumentalities, tools, and supplies needed to perform his duties. As to factor six, at the time of Peacock's surgery in 2003, Dr. Warner had worked at the Dallas VA for less than one year.[4] He was reappointed in 2004 and 2006. Under factors eight and ten, Dr. Warner's work was part of the regular business of the Dallas VA.

---

[3] There has been some uncertainty regarding the proper test to be applied in FTCA cases involving contract physicians. See Lilly v. Fieldstone, 876 F.2d 857 (10th Cir. 1989) and Lurch v. United States, 719 F.2d 333 (10th Cir. 1983). The court applies the factors used in applying the principles of Logue and Orleans in Wood v. Standard Products Co., 671 F.2d 825 (4th Cir. 1982) and the Restatement (Second) of Agency.

[4] Dr. Warner was previously a federal employee with the Dallas VA. Barbara Rogers, the Section Chief, Physicians and Nursing Recruitment in the Department of Human Resources Management for the Dallas VA stated that a search of the database of the Human Resources Department for Dr. Warner's name and social security number indicated that he has not been a federal employee with the Dallas VA since June 30, 1996. He received appointments to the cardiology section in 2003, 2004, and 2006.

The court concludes that factors five, six, eight, and ten are neutral and do not weigh heavily in favor or against independent-contractor status. In the case of a physician working in a hospital, the tools and instrumentalities would always be supplied, the work is part of the regular business of the hospital, and the business involved provides medical services. The length of time is not significant in this case because the contract between the Dallas VA and UTSWMC was a renewable, one-year contract, and Dr. Warner had been performing under the contract for a short period of time.

### c. Factor seven

The method of payment weighs in favor of independent-contractor status. The Dallas VA and UTSWMC entered into a contract for UTSWMC to provide the services of a physician for a fixed amount. Dr. Warner testified that he worked at the Dallas VA one or two days a week for one or two weeks a month. He stated that he received one salary from UTSWMC, and all of his vacation and benefits were paid by UTSWMC.[5] Dr. Warner testified that he wore his UTSWMC identification tag when he worked at the Dallas VA, and he did not have an office at the Dallas VA.

### d. Factor nine

Under the ninth factor, Peacock admits that Dr. Warner worked pursuant to a contract between UTSWMC and Dallas VA and that the contract explicitly states that the subcontractors shall not be considered VA employees. Peacock argues that the contractual language is not

---

[5] The government provides a redacted copies of Dr. Warner's payroll information from UTSWMC. Gov. exh. IV.

controlling for purpose of the FTCA because the statutory language was drafted to have an expansive reach.  Specifically, Peacock contends that the Dallas VA retained significant control over Dr. Warner because he was required to be on call seven days a week, to provide staff-attending coverage, to supervise resident staff and nursing staff, to document care, and to complete medical records.  Further, his performance was monitored under the direction of the chief of cardiology services.  Peacock argues that the degree of control signifies that cardiologists covered by the contract are employees of the Dallas VA.

Peacock further argues that the facts surrounding Dr. Warner's appointment to the medical staff of the Dallas VA support his status as an employee.  On April 28, 2003, the Department of Veterans Affairs issued a letter to Dr. Warner approving his "appointment to the medical staff in the VA North Texas Health Care System . . . as a Consultant and Attending Physician in Medical Services in the Cardiology Section," pursuant to 38 U.S.C. § 7405(a)(1).  Peacock argues that the appointment was a decision of the Dallas VA, not UTSWMC.

Moreover, Peacock argues that the physicians working under a contract performed duties that were virtually identical to other physicians.  Both types of physicians were required to abide by the same policies, rules, and regulations; responsibility toward support personnel was the same; and patients were billed in the same manner at the same costs.

The government presents the following evidence to support its argument under factor nine that the parties did not believe that they were creating the relation of master and servant.  Dr. Joseph a. Hill, M.D., Ph.D., chief of cardiology at the UTSWMC, states in an affidavit that Dr. Warner is an employee of UTSWMC, and is one of the cardiologists, employed by

9

UTSWMC, who provides certain cardiology services to the Dallas VA under Contract No. V549P-5975.  See Gov't exh. A.  Pursuant to the contract, UTSWMC provided professional liability coverage, worker's compensation, health examinations, and withholding of state and federal taxes as a full-time employee at UTSWMC..  Gov't exh. A, section H, 5.  Further, "[t]he parties agree that the contractor, its employees, agents and subcontractors shall not be considered VA employees for any purpose."  Id.  Section 852.237-70 of the contract states:

> It is expressly agreed and understood that this is a nonpersonal services contract, as defined in Federal Acquisition Regulations (FAR) 37.1010, under which the professional services rendered by the Contractor its health-care providers are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments.  The Contractor and its health-care providers shall be liable for their liability-producing acts or omissions. The Contractor shall maintain or require all health-care providers performing under this contract to maintain, during the term of this contract, professional liability insurance issued by a responsible insurance carrier of not less than the following amount(s) per specialty per occurrence: $1,000,000.  However, if the Contractor is an entity or a subdivision of a State that either provides for self-insurance or limits liability or the amount of insurance purchased by State entities, then the insurance requirement of this contract shall be fulfilled by incorporating the provisions of the applicable State law.

The court concludes that the evidence related to factor nine carries the most weight in favor of independent contractor status.  Although the language of the contract is not controlling, it is a strong indication that the parties believed that the relationship was one of independent contractor.  That belief is supported by the evidence that UTSWMC was paid a contract price for providing physicians, and UTSWMC paid the physician a salary and withheld the appropriate amounts for taxes, insurance, etc.

As to the arguments raised by Peacock concerning oversight and a formal approval of Dr. Warner's appointment by the Department of Veterans Affairs, what is important is not that Dr. Warner had to comply with federal regulations and apply federal standards, but whether his day-to-day operations were supervised by the federal government.  See Leone v. United States, 910 F.2d 46, 50 (2d Cir. 1990).  "Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of [Dr. Warner] . . . into federal government acts." Orleans, 96 S.Ct. at 1971.  A contractor is not an employee if the government agency "acts generally as an overseer." Leone v. United States, 910 F.2d at 50.  A contractor is an employee only if the government agency "manage[s] the details of [the contractor's] work or supervise[s] him in his daily duties."  Id.  The Dallas VA was expected to insure the quality of the work performed in its hospital, but that oversight does not transform independent contractors into employees.  See Knudsen v. United States, 254 F.3d 747 (8th Cir. 2001.)

Accordingly, the court concludes that the factors weigh in favor of independent-contractor status.  Dr. Warner is not a federal employee of the Dallas VA, and the court lacks subject matter jurisdiction under the FTCA.

**C.  Judicial estoppel**

Peacock contends that the United States is judicially estopped from asserting that Dr. Warner was not a federal employee because this position is inconsistent with the previous judicial assertion that he is a federal employee.

"Equitable estoppel is rarely valid against the government." Linkous v. United States, 142 F.3d at 277.  "In order to establish estoppel against the government, a party must prove

11

affirmative misconduct by the government in addition to the four traditional elements of the doctrine."[6] Id. "Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government."  Carrillo v. United States, 5 F.3d 1302, 1306 (9th Cir 1993).  The government's conduct must be "wrongful" for the government to be estopped.  "The four traditional elements of estoppel are: (1) that the party to be estopped was aware of the facts, and (2 intended his act or omission to be acted upon; [and] (3) that the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury."  Linkous v. United States, 142 F.3d at 277-78.

Peacock has not alleged facts to support affirmative misconduct by the government in concealing Dr. Warner's employment status.  He alleges that the government had the opportunity and duty to discover the correct information , and its "mistake" or "unawareness" is not a defense to estoppel.  These facts are insufficient to show affirmative misconduct and to establish estoppel.

---

[6]   In State of Mich. v. City of Allen Park, 954 F.2d 1201, 1217 (6th Cir. 1992), the Court of Appeals for the Sixth Circuit clarified the concept of judicial estoppel against the government as follows:

> Estoppel will seldom apply against the sovereign.  Although the Supreme Court has never adopted a "flat rule" absolutely prohibiting estoppel against the government, it is clear that this equitable doctrine is very limited as a basis of government liability.  When public funds are involved, the Supreme Court has adopted "a most strict approach to estoppel claims."  When a party seeks payment from public funds that is contrary to the purpose for which Congress appropriated the funds, a court has no authority to order such payment in reliance on the doctrine of estoppel.  Such an order would violate the separation of powers principle that is fundamental to our form of government.

(internal citations omitted).

Moreover, even if affirmative misconduct could be shown, it would not be sufficient for estoppel in this case.  See Broussard, 989 F.2d at 177.  Congress consented to a suit against the United States under the FTCA; however, this consent to be sued is limited.  See Broussard v. United States, 989 F.2d at 174 (consent does not extend to the acts of independent contractors). Action or inaction by agents of the government cannot waive sovereign immunity.  See United States v. U.S Fidelity & Guar. Co., 60 S.Ct. 653, 656-57 (1940).  The court is vested with authority to examine the basis of its jurisdiction at each stage of the proceeding.  See McNutt v. Gen. Motors Acceptance Corp., 56 S.Ct. 780, 783 (1936).  "Where no such consent exists, a district court has no jurisdiction to entertain a suit against the United States."  See Broussard v. United States, 989 F.2d at 174.  Because Dr. Warner is an independent contractor, the court lacks subject matter jurisdiction in this case.[7]

### III.  CONCLUSION

The statutory consent to sue under the FTCA through the waiver of sovereign immunity is not present in this case because Dr. Warner is not a federal employee.  Further, judicial estoppel is not applicable against the government.  Accordingly, the court lacks subject matter jurisdiction, and the United States of America's motion to dismiss is granted.

New Orleans, Louisiana, this  19th  day of December, 2008.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

---

[7] Because the government did not, in a timely manner, correct its mistaken admission that Dr. Warner was a federal employee, serious disruption of the case has resulted.  This conduct will be dealt with in the plaintiff's motion for sanctions.  However, the government's "admission that Dr. Warner is a federal employee cannot make him a federal employee when the factors indicate that he is an independent contractor.

13