UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHN F. PEACOCK | CIVIL ACTION |
| VERSUS | NO. 07-988 |
| UNITED STATES OF AMERICA | SECTION "S"(3) |

**REPORT AND RECOMMENDATION
REGARDING QUANTUM OF ATTORNEY's FEES**

On December 19, 2008, the district judge granted Plaintiff's Motion for Sanctions pursuant to Rules 26(g) and 16(h) of the Federal Rules of Civil Procedure.[1] Considering the totality of the circumstances, the court held that the Government failed to make a reasonable inquiry before certifying that Dr. Warner was a federal employee. Accordingly, the court granted sanctions in the form of costs/expenses totaling $47,608.01 plus reasonable attorney's fees incurred by the plaintiff as a result of the defendant's conduct to be determined by the magistrate judge).[2] For reasons set forth below,

> **IT IS RECOMMENDED** that order and judgment issue awarding attorney's fees in favor of the plaintiff, John F. Peacock, and against the United States of America in the amount of **$112,896.00** plus expenses/costs in the amount of $47,608.01 as previously determined by the district judge.

---

[1]*See* Order dated December 19, 2008 [Doc. # 85].

[2]*Id.* at p. 6.

1

**BACKGROUND**

On February 14, 2007, plaintiff, John F. Peacock ("Peacock"), filed the captioned matter under the Federal Tort Claims Act (FTCA), 22 U.S.C. §2671, *et seq.,* alleging medical malpractice against the Government – *i.e.*, breach of the standard of care by medical health care providers (Dr. Warner's and Martin's) while in the course and scope of their employment with Dallas VA Medical Center.[3] Plaintiff alleged he suffered a severe heart attack which resulted in congestive heart failure and other serious conditions as a result of the breaches of the standard of care, including a dissected left artery which caused a myocardial infarction and negligent failure to observe complications on cineangiogram available during the procedure. There was some question as to whether a heart transplant may be necessary. In sum, plaintiff contends that this serious litigation involved difficult and complex factual, medical and legal issues as well as substantial damages. Plaintiff's allegations were met with a vigorous defense by the United States. However, up to and including the rendition and filing of the pretrial order, the Government agreed and/or stipulated that Dr. Warner was at all pertinent times a Government employee operating within the course and scope of his employment. That did not change until *less than a week before trial on the merits* when **defense counsel**, **who is no longer with the United States Attorney's office**, *asserted for the first time* that Dr. Warner was not the government's employee.

**PARTIES' POSITIONS**

*Plaintiff's Application*

Plaintiff submits that contemporaneous time records were not kept in this case because this

---

[3]*See id.* at p. 1 (reiterating plaintiff's allegations regarding his October 22, 2003 angioplasty procedure gone awry performed at the Dallas Veterans Administration Hospital by Dr. John Warner and Dr. Justin Martin).

2

case was filed pursuant to the FTCA, which provides that attorney's fees be calculated based upon 25% of the recovery.[4] Plaintiff's counsel has reconstructed the billing records which comports with the work performed on behalf of the plaintiff since filing the captioned matter on February 14, 2007. In this regard, plaintiff has submitted summaries of the work performed and the time expended by Irving J. Warshauer and Michael J. Ecuyer.[5] Plaintiff seeks attorney's fees in the total sum of $125,440.00 for work performed in connection with the instant litigation from the outset. Said sum represents 366.60 hours of the aforesaid attorneys' time at the hourly rates of $350.00 and $250.00 for Mssrs. Warshauer and Ecuyer, respectively.

*Defendant's Opposition*

The Government disputes the hourly billing rates, arguing that $350.00 for a partner and $250.00 for an associate is not reasonable. Defendant cites case law primarily dealing with pre-Hurricane Katrina rates, none of which involve cases filed under FTCA nor allegations of medical malpractice involving complex legal and medical issues. The United States suggests that an affidavit from a well-respected fellow attorney, who handles such complex personal injury matters from the aspect of both prosecution and defense, is not sufficient to justify the rates charged. The Government also cites a default judgment case involving a fraudulent bond where the plaintiff's application for attorney's fees was unopposed[6] and suggests that an hourly rate of $150.00 an hour is more reasonable in this particular case.

---

[4] *See* 28 U.S.C. § 2678.

[5] *See* Summary of Time for Irving J. Warshauer (Plaintiff's Exhibit 1 in globo) [Doc. 94-3]; Summary of Time for Michael J. Ecuyer [Doc. 94-4].

[6] *St. Stephen's Missionary Baptist Church v. Taylor*, 2008 WL 4057162 (E. D. La 2008) (Knowles, M.J.).

3

Addressing the issue of billing judgment, defendant contends that plaintiffs' counsel failed to exercise same. In this regard, the Government submits that, as soon as the correct status of the physician was determined, plaintiff's counsel and the court was so apprised and, thereafter, defendant filed its motion to dismiss. Moreover, because the district judge could not make a determination on the basis of record regarding the status of Dr. Warner, discovery was permitted on the issue of employment status. Defendant's position is that, had it filed a motion to dismiss at the outset of the case, the court would have required discovery on the issue for purposes of verifying Dr. Warner's employment status. The Government argues that all time performed opposing the motion to dismiss, including the discovery associated therewith, should be redacted as the work would have been performed even if the motion to dismiss had been filed right after suit was filed by the plaintiff. Additionally, the Government contends that it is clear that Plaintiff's own inaction (apart from and prior to the erroneous representations of Defendant) precludes a claim against Dr. Warner in a court of proper jurisdiction. The Government argues that, utilizing billing judgment, appropriate hourly rates and the lodestar approach,[7] reasonable attorney's fees in this case should amount to no more than $36,537.50. Finally, defendant contends that said fee should be further reduced by 10% to account for duplicative and block billing.[8]

---

[7] A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) (*citing Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir.1999)). (emphasis in original)).

[8] The Government highlights two large block items – *i.e.*, 42 hours by Mr. Warshauer and 18.20 hours by Mr. Ecuyer noting only "trial preparation" without further explanation. Additionally, defendant highlights 20.90 hours of telephone conversations, none of which provide any details as to the content or topic of each such conversation. The Government cites jurisprudence, including *Walker v. U.S. Dept. of Housing and Urban Development,* 99 F.3d 761, 769 (5th Cir. 1996) and *Clark v. Butler*, 916 F.2d 255, 259 n. 6 (5th Cir. 1990) addressing the issue of "terse listings" without

4

*Plaintiff's Reply*

Plaintiff highlights that the determination of "market rate" for services is inherently difficult as the types of services rendered by attorneys, as well as their experience and reputation vary extensively, *even within the same law firm*. Peacock notes that the determination of rates should not be based primarily on fees awarded in previous cases as the defendant appears to suggest. Indeed, the Supreme Court contemplates the presentation of "satisfactory evidence,"[9] which the plaintiff has accomplished in submitting the affidavit of Phillip A. Wittman, an experienced, well-respected attorney practicing in this community, attesting to the reasonableness of fees requested by plaintiff's counsel in this case.[10] Moreover, despite the litany case recited by defendants, plaintiff notes that the Louisiana Supreme Court had identified the rate of $250.00 as the midpoint in the spectrum of reasonable attorney's fees.[11] As to defendant's allegation that plaintiff's counsel has failed to exercise billing judgment, plaintiff counters that the redaction of numerous hours expended by the firm's paralegal/law clerk staff (which it is entitled to bill) is more than sufficient exercise of billing judgment. Finally, as to the redaction of 110.90 hours from the overall time based upon what plaintiff's counsel would have done had defendant accurately represented Dr. Warner's employment status at the beginning of the case, plaintiff submits that such a reduction is based upon rank

---

further explanation and concluding that such "scanty" entries lacked sufficient detail. *See* Government's Memorandum in Opposition at pp. 9-10 [Doc. 97].

[9]*Blum v. Stetson*, 465 U.S. 886, 896 n. 11 (1984).

[10]*See Lytal Enterprises, Inc. v. Newfield Exploration, Co.,* 2006 WL 3366189 (E. D. La. 2006) (noting that the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits and that it is generally established through affidavits of other attorneys practicing in the area, *citing Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).

[11]*See Rivet v. State of Louisiana,* 800 So.2d 777, 782 (La. 2001).

speculation.

**DISCUSSION**

The undersigned has reviewed the record in conjunction with plaintiff's application for attorney's fees and costs filed in compliance with Local Rule 54.2, including the necessarily reconstructed time records reflecting the date, time involved and the nature of services performed and the affidavit of Phillip A. Wittmann, insofar as it addresses the credentials and experience of plaintiff's counsel and the customary/market rate in this community in light of the nature/complexity of the case. Billing judgment was exercised in light of the fact that all time invested by paralegals/law clerks at the firm was excised. Indeed, plaintiff's counsels' billing summaries reflect only time spent by Mssrs. Warshauer and Ecuyer prosecuting this case. Plaintiff's counsel did not address the issue of "block billing" or "terse listings." In that regard, the defendant has asked the court to excise 10% of the total. The Court agrees that a discount of 10% is reasonable and appropriate under circumstances.

Now turning to the Government's contention that all time spent opposing its Motion to Dismiss – *i.e.*, <110.90 hours> re Warshauer and <8.80 hours> re Ecuyer – should be excised, this Court is not persuaded. Indeed, the undersigned cannot ignore the fact that the district judge allowed for the recovery of costs dating back to September of 2007.[12] It would defy logic to allow for the recovery of expenses generated prosecuting the case but disallow the corresponding attorney's fees. Moreover, it is undisputed that, in answer to the complaint on June 1, 2007, the

---

[12]*See* Peacock's Memorandum in Support of Motion for Sanctions and Itemization of Expenses Totaling $47,608.01 [Doc. Nos. 58-2, 58-5]; Order and Reasons dated December 19, 2008 at p. 6 of 7 (granting expenses in the full amount of $47,608.01 as sanctions plus attorney's fees to be determined by the undersigned) [Doc. No. 85].

government judicially admitted that Dr. John Warner, et al, were government employees acting within the course and scope of their employment at the Dallas Veterans Affairs Medical Center. Thereafter, in answer to plaintiff's interrogatory number 1, the defendant reiterated same. Finally, the pretrial order filed July 21, 2008 stipulates same as an uncontested material fact. *See* Pretrial Order at Section 7(k). Plaintiff's sanctions award (expenses plus attorney's fees) is based upon the district judge's finding that the Government should have been aware of the contract between the Veterans Affairs North Texas Healthcare System and the University of Southwestern Medical Center at Dallas *at least by the time that the Government certified its answers to discovery.*[13] The district judge's sanctions order issued pursuant to both Rule 16(f) and Rule 26(g)(3). Considering the totality of the circumstances, it is reasonable to conclude that all costs and fees post-dating September 1, 2007 accrued as a result of the defendant's sanctionable conduct and that said costs *including attorney's fees* should be taxed against the defendant. Suffice it to say, in the face of three (3) prior (albeit erroneous) judicial admissions, the plaintiff was understandably concerned about the merits of the motion to dismiss and conducted the requisite discovery. Moreover, plaintiff had no reason to challenge the Government's stipulation that Dr. Warner was at all pertinent times its employee working within the course and scope of his employment and had *three* good reasons to oppose the motion to dismiss filed at the eleventh hour.

Finally, addressing the reasonableness of the hourly rates charged by plaintiff's counsel, said market rates have steadily climbed in this area post-Hurricane Katrina. Defendant suggests that $150.00 per hour is appropriate to compensate Mr. Warshauer. This Court disagrees. The Government's citation of *St. Stephen's Missionary Baptist Church v. Taylor*, 2008 WL 4057162 (E.

---

[13]*See* Order and Reasons at p. 3 [Doc. No. 85].

7

D. La 2008) (Knowles, M.J.) is inapposite. The application in that case concerned an ordinary, "run-of-the-mill" fraudulent bond suit that ultimately resulted in the issuance of *a default judgment*. As in *St. Stephen's Missionary Baptist Church's* case in chief, its application for fees was **not** opposed. The law is that, where the hourly rate at which the applicant's attorney requests the lodestar be computed is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate; moreover, when that rate is not contested, it is *prima facie* reasonable.[14] *Ergo*, the rate requested by Mr. Krebs ($150.00) was applied by the undersigned in calculating the lodestar in the *St. Stephen's Missionary Baptist Church* case.

Considering the record, the complexity of Peacock's case,[15] the applicable law[16] and the evidence submitted in support of plaintiff's application, including counsel's experience (extensive in the area of plaintiff's personal injury/medical malpractice, years of practice (30 years)[17] and the work performed in this case (extremely complicated),[18] the Court has determined that the hourly

---

[14]*See also La. Power and Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)

[15]*See* Transcript of the November 12, 2008 Hearing at p. 14 (discussing the operative procedure, the dissection of another artery and plaintiff's resulting heart attack which left him with numerous health problems including the congestive heart failure, on dialysis for months and the probable need for a heart transplant) [Doc. # 93].

[16]*See id.,* at pp. 28- 34 (discussing numerous legal complications including but not limited to the waiver of sovereign immunity vs. the specter of doctrine of judicial/equitable estoppel, which issues derived from the position taken by the Government at the outset and reiterated again in discovery responses and yet again in the pretrial order).

[17]*See id.,* at p. 5 (wherein plaintiff's counsel attested as to his 30 years experience, emphasizing that this was only his second motion for sanctions filed only because of the serious consequences of the Government's sanctionable conduct, including extreme prejudice to plaintiff as a result of violations of Rule 16F and 26(g)).

[18]*See id.* at pp. 11-13 (discussing the complexity of the medical issues/background, the hundreds of hours spent preparing written discovery, for depositions and for trial and further noting that counsel deleted from the expert cardiologist's itemization of costs the expert's charges for

rates charged by Mssrs. Warshauer and Ecuyer ($350.00 and $250.00 respectively) are fair, reasonable and within the range of market rates charged in this community *post*-Hurricane Katrina.[19]

### THE LODESTAR APPROACH

The Fifth Circuit has oft-repeated that a request for attorneys' fees should not spawn ancillary major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Board*, 919 F.2d 374, 379 (5th Cir.1990). A court's discretion in fashioning a reasonable attorney's fee is broad and reviewable only for an abuse of discretion, *i.e.*, it will not be reversed unless there is strong evidence that it is excessive or inadequate, or the amount chosen is clearly erroneous. *Hopwood v. State of Texas*, 236 F.3d 256, 277, n. 79 (5th Cir.2000); *Hensley*, 461 U.S. at 436-37.

In determining a reasonable fee, the court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the

---

telephone conversations/discussions bringing counsel up to speed regarding the complicated medical aspects of Peacock's case).

[19]*See e.g., Johnson v. Big Lots Stores, Inc.,* 2009 WL 1870862 * 3 (E. D. La. June 25, 2009) (Vance, J.) (finding $300 hourly rates are within the customary range for partner-level attorneys practicing employment law in the area and $225 hourly rate within the customary range of rates charged); *In re OCA, Inc., Sec. and Derivative Litig*., 2009 WL 512081, at * 25 (E. D. La.2009) (finding that partner-level attorneys performing securities work customarily billed at a rate between $400 and $450 an hour and associates customarily billed at a rate between $200 and $250 an hour); *Collins v. Sanderson Farms*, 568 F.Supp. 714, 728 (E. D. La. Jul. 9, 2008) (finding $350.00 an hour for partners reasonable); *Thompson v. Connick,* 553 F.3d 836, 868 (5th Cir.2008) (surveying cases and approving hourly rates of $202 to $312 for experienced attorneys and $67 to $112 for paralegals as "at the upper range of what was reasonable in the" Eastern District of Louisiana *from 2003 to 2007*). *See also White v. Imperial Adjustment Corp.,* 2005 WL 1578810, at *8 (E. D. La. June 28, 2005) (Englehardt, J.) (surveying cases and increasing hourly rate awarded to plaintiff's counsel to account for five more years experience and the incremental rise in the cost of doing business over the same period of time).

9

requested hourly rate is reasonable and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit. *Hensley*, 461 U.S. at 437-39, 103 S.Ct. at 1941-43; *Associated Builders and Contractors*, 919 F.2d at 379. The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).

**Reasonable Attorney's Fees**

In assessing the reasonableness of attorney's fees, the court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *See Hensley*, 461 U.S. at 433; *Green v. Administrators of the Tulane Educational Fund,* 284 F.3d 642, 661 (5th Cir. 2002); *Migis v. Pearle Vision, Inc.*, 135 F.2d 1041, 1047 (5th Cir.1998); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 516 U.S. 862 (1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir.1996); *Kellstrom*, 50 F.3d at 324; *In re Smith*, 996 F.2d 973, 978 (5th Cir.1992).

Turning to the time records compiled and submitted by plaintiff's counsel, this Court has been given no reason to doubt that the hourly rates of $350.00/Senior Partner and $250.00/Associate are consistent with counsel's ability, competence, experience, and skill. Considering the prevailing market rates in the Greater New Orleans area and the affiant's testimony submitted in support of the present fee application,[20] the Court is convinced that the aforesaid hourly rates are within the range, albeit the high end of the market rate in this area and said rates are reasonable under circumstances

---

[20]*See* Plaintiff's Application at Exhibit "A" [Doc. # 134-3]

presented in this particular case.[21]

## The *Johnson* Factors

Next, the court must consider whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case and the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). *See Green*, 284 F.3d at 661; *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir.1987). The twelve factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

While the court's analysis need not be meticulously detailed, it must articulate and clearly apply the *Johnson* criteria. *Riley*, 99 F.3d at 760 (*quoting Kellstrom*, 50 F.3d at 331). To the extent that any of the *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis,* 135 F.3d at 1047. The most critical factor in determining the reasonableness of an attorney's fee award "is the degree of success [or result] obtained." *Hensley*, 461 U.S. at 436; *Farrar*, 506 U.S. at 114.[22] Moreover, an applicant

---

[21] *See* Note 14, *supr*a.

[22] S*ee also Giles v. General Elec. Co.*, 245 F.3d 474, 491 n. 31 (5th Cir.2001) (stating that the most important factor under the *Johnson* analysis is the result obtained); *Migis*, 135 F.3d at 1047.

must show that billing judgment was exercised, so that the court may determine the number of hours reasonably expended on a case. *Green,* 284 F.3d at 662 (*citing Walker v. HUD,* 99 F.3d 761, 769 (5th Cir. 1996)).

This Court recognizes the law which provides that when a party achieves partial success, *total* reliance on and use of the lodestar method may not be appropriate. In this regard, the Supreme Court observed:

> If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for the plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 436.[23] In a case where an applicant has achieved only limited or partial success, once a court considers the "amount and nature of damages awarded, [it] may lawfully award low fees or no fees without reciting the 12 [*Johnson* ] factors bearing on reasonableness," or without computing the lodestar. *Farrar,* 506 U.S. at 115. *This is not one of those cases in which it is appropriate to discount the fee award on account of the result – i.e., dismissal of the plaintiff's case.* In Peacock, the undersigned is tasked to exercise discretion in determining a fee award *as sanctions,* which will reasonably compensate plaintiff's counsel for services rendered and which expenditure of time resulted from the Government's violations of Federal Rules of Civil Procedure 16F and 26(g). **The fact that the Government ultimately prevailed in this particular case is of no moment**.

---

[23]*See Migis*, 135 F.3d at 1048 (applying the principle enunciated in *Hensley* and remanding an award of attorney's fees because the district court failed "to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the result sought").

This Court must consider the reasonable number of hours that plaintiff's counsel expended on the litigation, considering the defendant's transgressions. The burden of proving the reasonableness of the hours expended is on the fee applicant.[24] As a general proposition, all time that is excessive, duplicative and/or unproductive should be excised from any award of attorney's fees.[25] Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards.[26] The fee seeker's attorneys "are charged with proving that they exercised billing judgment."[27] When billing judgment is lacking, the court *must* exclude from the lodestar calculation the hours that were not reasonably expended.[28]

In this case, the Court finds that the lodestar computation is an appropriate starting and ending point, all as more particularly set forth in detail below.

| **Attorney** | **Hours** | **Rate** | **Total Fees** |
|---|---|---|---|
| **Partner** | | | |
| Irving J. Warshauer[29] | 337.90 | $350.00 | $118,265.00 |

---

[24]*Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 528 (5th Cir. 2001).

[25]*Watkins*, 7 F.3d at 457.

[26]*Walker*, 99 F.3d at 769.

[27]*Id.* at 770.

[28]*Hensley*, 461 U.S. at 434.

[29]Irving J. Warshauer is a partner with the law firm known as Gainsburgh, Benjamin, David, Meunier & Warshauer, having joined the firm in 1980. Prior to 1980, he was an Assistant United

**Associate**

| | | | |
|---|---|---|---|
| Michael J. Ecuyer[30] | 28.70 | $250.00 | $ 7,175.00 |

**Subtotal Total Fees** $125,440.00

**Less 10% for "Block Billing"/ "Terse Listings"** <u><$12,544.00></u>

**TOTAL ATTORNEY'S FEES** $112,896.00

As explained more fully below, this court has fully considered the application at issue in light of the teachings in *Hensley*, *Farrar*, and *Migis*, *supra*, and determined that no adjustment to the lodestar is appropriate, except for the 10% discount to account for "block billing," "terse listings," and/or scanty explanations for large amounts of time spent preparing for trial. In this regard, the Court was persuaded by the Government's argument discussed above.

It is noteworthy that the *Johnson* analysis has been augmented or amended since its formulation. The Supreme Court has "barred any use of the sixth factor" and thus, the contingent nature of the case cannot serve as a basis for enhancement of the fee. *See Walker v. U. S. Department of Housing and Urban Development,* 99 F.3d 761, 772 (5th Cir. 1996) (*citing Burlington,* 505 U.S. at 567).[31] In addition, the court's application of the *Johnson* factors is limited to those *factors that have not already been addressed through the court's calculation of the number of*

---

States Attorney in the Eastern District of Louisiana and a trial attorney in the United States Department of Justice. Mr. Warshauer has approximately twenty-eight (28) years experience devoted primarily to plaintiff's personal injury work.

[30]Michael J.Ecuyer joined the aforesaid law firm in November of 2003 and became partner effective January 1, 2009. Prior to 2003, he worked at the firm of Galloway, Johnson, Tompkins, Burr and Smith for approximately eight years. Mr. Ecuyer had approximately twelve (12) years experience when he commenced working on the Peacock case.

[31]*See also Shipes v. Trinity Indus.,* 987 F.2d 311, 323 (5th Cir. 1993) (the contingent nature of a case cannot serve as a basis for enhancement of attorney fees).

*reasonable hours* and *rate per attorney*. *Migis*, 135 F.3d at 1047; *Watkins,* 7 F.3d at 459.

In this vein, the Fifth Circuit has warned that the first factor (time and labor involved) and the seventh factor (time limitations imposed by the client or the circumstances) are especially susceptible to "double counting." *Walker,* 99 F.3d at 771, 772. More recently, the Fifth Circuit held in *Shipes, supra,* that the novelty and complexity of the issues (factor two), the special skill and experience of counsel (factor three), the results obtained from the litigation (factor eight), and the quality of representation (factor nine) are presumably fully reflected in the lodestar amount. *Shipes*, 987 F.2d at 322. Upward adjustments to the lodestar are proper only in certain "rare and exceptional cases." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986). Counsel does not suggest that this is one of those cases.

Turning to a few of the important factors (*i.e.*, factors one, two, three and nine), these factors have already been considered in calculating the lodestar. The Court therefore determines that no revision of the lodestar computation is warranted based on these factors. The novelty and complexity of the issues (factor two), together with the special skill and experience of counsel (factor three) and the quality of representation (factor nine) are fully reflected in the lodestar amount. *Shipes*, 987 F.2d at 322. No reduction is warranted considering the 10% discount exercised across the board to adjust for "block billing." For the foregoing reasons, the Court believes that no adjustment is warranted on the basis of these factors.

As to time limitations imposed by the client or the circumstances (factor seven), the record in this case does not support an adjustment based upon the aforesaid factor. A review of the record does not reflect the existence of any unusual circumstances affecting representation of the plaintiff, such as counsel being retained in haste, the preclusion of other work or an expedited trial schedule.

Under the circumstances, this Court believes that no adjustment is warranted pursuant to the seventh *Johnson* factor.

Factors ten through twelve also warrant no adjustment under the circumstances. To the degree that the case could be considered undesirable for any reason raised in the context of the instant application, these issues have already been covered under factor two and *in the hourly rates assigned* at the high end of the range (i.e., $350.00 and $250.00 per hour, respectively). As aforestated, counsel's experience, ability and reputation was subsumed in calculating the lodestar.

Consideration of eighth *Johnson* factor - the results obtained - does not require an adjustment of the lodestar. Generally, this factor is applied where there is partial success and to reduce a fee award. *Hensley v. Eckerhart,* 461 U.S. 424 (1983). The undersigned previously explained at length why such an adjustment is not warranted in this particular case involving a sanctions award pursuant to Rules 16F and 26(g). The Court further notes that the total number of hours billed does not include time for services rendered prior to September of 2007 and does not include any time expended by paralegals and law clerks assisting plaintiff's counsel.

## RECOMMENDATION

Accordingly and for all of the above and foregoing reasons,

**IT IS RECOMMENDED** that plaintiff's Motion for Attorney's Fees be GRANTED in the full amount of **$ 112,896.00 ,** plus expenses/costs in the amount of $47,608.01 as previously determined by the district judge.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 2nd day of September, 2009.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**